

FILED

MAY - 7 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

LARS

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 12-93176-E-7 |
| LESA MARIE DEL DON, | |
|      Debtor. | |
| —————————————————— | |
| JENNIFER KUBALA and | Adv. Pro. No. 13-9007 |
| SHARON STENCIL, | |
|      Plaintiffs, | |
| v. | |
| LESA MARIE DEL DON, | |
|      Defendant. | |
| —————————————————— | |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

## MEMORANDUM OPINION AND DECISION

This Adversary Proceeding was commenced by Jennifer Kubala and Sharon Stencil ("Plaintiffs") requesting their claim against Lesa Marie Del Don ("Defendant-Debtor") be determined nondischargeable in Defendant-Debtor's Chapter 7 Bankruptcy Case (Bankr. E.D. Cal. No. 12-93176).  Jurisdiction for this Adversary Proceeding exists pursuant to 28 U.S.C. §§ 1334 and 157(a), and the referral of bankruptcy cases and all related matters to the bankruptcy judges in this District.  ED Cal. Gen Order 182, 223.  This Adversary

Proceeding is a core matter arising under Title 11, including 11 U.S.C. §§ 523(a). 28 U.S.C. § 157(b)(2)(I). In addition, the Parties have expressly consented on the record pursuant to 11 U.S.C. § 157(c)(2) that for all non-core matters in this Adversary Proceeding, the final orders and judgment shall be entered by the bankruptcy judge.

### SUMMARY OF ADVERSARY PROCEEDING ISSUES

This Adversary Proceeding arises out of the 2008 purchase by Plaintiffs of the Defendant-Debtor's business known as "Consign Couture" ("Business"). This Business is identified in the purchase and sale agreement both as a dba of the Defendant-Debtor and a limited liability company.[1] The purchase price was $30,000.00, with the property being sold ("Assets") described as,

A.   Consign Couture, located on Dolores Street 3 SW of 5th, Carmel, California;

B.   eBay Seller User ID only "consigncouture;"

C.   www.ConsignCouture.com Website; and

D.   Additional personal property described in a two-page exhibit with the Purchase Agreement.

After the sale closed and Plaintiffs were operating the Business, Plaintiffs were notified by the California State Board of Equalization that a substantial unpaid sales tax liability existed for the Business at the time they purchased it. The sales tax liability arose during the period of time the Business was owned and operated by the Defendant-Debtor. The State Board of Equalization noticed an assessment against the Plaintiffs personally (as purchasers of the Business) for this pre-purchase

---

[1]   Exhibit 1.

2

sales tax liability of the Defendant-Debtor.  Plaintiffs disputed the assessment and prosecuted an appeal, which was denied.  The State Board of Equalization assessed $30,000.00 in successor tax liability (equal to the amount of the purchase price which had been paid to Defendant-Debtor) against the Plaintiffs for the Defendant-Debtor's unpaid sales taxes.

Upon learning of the unpaid sales taxes and the State Board of Equalization assessment of successor tax liability, Plaintiffs contacted Defendant-Debtor concerning this tax debt.  When Defendant-Debtor did not sufficiently address the unpaid sales taxes and successor liability assessment to their satisfaction, Plaintiffs filed suit against the Defendant-Debtor in state court. That and other liabilities precipitated the 2012 filing of a Chapter 7 bankruptcy case by the Defendant-Debtor.  Bankr. E.D. Cal. 12-93176.

On February 21, 2013, Plaintiffs filed the present Complaint for a determination that tort obligations of the Defendant-Debtor arising out of the sale of the Business were nondischargeable on the grounds of fraud as provided in 11 U.S.C. § 523(a)(2)(A). Further, that based on Defendant-Debtor's conduct, Plaintiffs seek punitive damages.

As set forth below, the court determines that the Plaintiffs have established that the Defendant-Debtor's conduct constitutes fraud as provided in 11 U.S.C. § 523(a)(2)(A) and applicable California law, the compensatory damages awarded by the court are $40,850.00, and the Plaintiffs are also awarded $10,000.00 in punitive damages.

///

3

**APPLICABLE LAW**

As is well established in the Ninth Circuit, the five elements of fraud sufficient to have a debt determined nondischargeable pursuant to § 523(a)(2)(A) are:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor;
>
> (2) knowledge of the falsity or deceptiveness of his statement or conduct;
>
> (3) an intent to deceive;
>
> (4) justifiable reliance by the creditor on the debtor's statement or conduct; and
>
> (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

*Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081 (9th Cir. 2000); *American Express Travel Related Servs. Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1125 (9th Cir. 1997); *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1086 (9th Cir. 1996).

The requirements for nondischargeable fraud under the Bankruptcy Code mirror the requirements for a fraud claim under California law. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996); *Seeger v. Odell*, 18 Cal. 2d 409, 414 (1941); *Thrifty Payless, Inc. v. Americana brands, LLC*, 218 Cal. App. 4th 1230, 1239 (2013).

Plaintiffs have been assessed sales tax liability pursuant to California Revenue and Taxation Code §§ 6811 and 6812 by the California State Board of Equalization for the sales taxes not paid to the State by Defendant-Debtor in the operation of the Business, Consign Couture. Under these Revenue and Taxation Code Sections the purchaser of a business is to withhold a sufficient portion of

4

the purchase price to "[c]over such amount [of taxes owed] until the former owner produces a receipt from the [State Board of Equalization] that [the sales tax] has been paid or a certificate stating that no amount is due." Cal. Rev. & Tax. Code § 6811.  If the purchaser fails to withhold the necessary portion of the sale proceeds, then the purchaser has personal liability for the unpaid taxes to the extent of the purchase price.  Cal. Rev. & Tax. Code § 6812.

Argument was made at trial that the personal property purchased was subject to a tax lien for the unpaid property taxes, notwithstanding there not having been a tax lien filed with the California Secretary of State.  Plaintiffs direct the court to California Revenue and Taxation Code § 6757 for the proposition that a perfected lien is created on the personal property when the tax is due.  However, this lien is subject to the provisions of California Civil Code § 7150 et seq.[2]  California Government Code § 7170(a) and (c) provide that any such tax lien is not valid as to personal property with respect to a variety of persons, including (1) a person who acquires an interest in the personal property without knowledge of the lien or (2) a buyer in the ordinary course of business (Cal. Com. Code § 9320).  There was no evidence presented that the State Board of Equalization asserted a lien against the Business which was superior to that of the Plaintiffs' interest in the Business.

## CLAIMS ASSERTED AND NONDISCHARGEABILITY

Plaintiffs assert that they were defrauded by Defendant-Debtor

---

[2]  Cal. Rev. & Tax § 6757(a).

into purchasing the Business and Assets, which unknown to them, were subject to an unpaid sales tax obligation.  In February 2008, the Plaintiffs purchased the Business from Defendant-Debtor for $30,000.00 (the "Sale").   This purchase price was paid to Defendant-Debtor.

The Sale was documented by a written Sales Contract/Bill of Sale for Business ("Sales Contract").[3]   This Sales Contract included the following representation and warranty by Defendant-Debtor,

> 4.  Warranty of Ownership.  Seller [Defendant-Debtor] warrants that Seller is the legal owner of the Business and that it is free of all liens and encumbrances.

In addition to the Sales Contract, Plaintiff Jennifer Kubala (as the lead buyer representative of Plaintiffs) had oral and written communications with Defendant-Debtor in which Defendant-Debtor stated that there were no "tax issues." As is demonstrated in Exhibit 2, which is a copy of an email thread between the Defendant-Debtor and Plaintiff Kubala, the communications are in lay-person speak, not transaction lawyer precision. The Defendant-Debtor affirmatively states, "For the sales tax's [sic.] you are correct I have paid those out of my business savings account...I have it linked together."   This is in response to an inquiry by Plaintiff-Kubala concerning an inconsistency in the financial information provided by the Defendant-Debtor which showed a line item for 2007 sales of $318,770.53 and sales tax of "-3993.00." Ms. Kubala requested in the email thread confirmation that the "-3993.00" did not account for the 7% sales on sales of

---

[3]  Plaintiffs' Exhibit 1.

6

$318,770.53.

The testimony presented to the court was that the financial information provided by the Defendant-Debtor was not a profit and loss statement or books of the Business, but "financial information" collected by others working for Defendant-Debtor. Though Plaintiffs were provided access to this information about the Defendant-Debtor's Business, there was not a clear set of financial records showing the liabilities of the Business.

The Defendant-Debtor testified that she was not good with, and not responsible for, the books, issuance of checks, and the day to day store operation. Her focus was on the on-line sales side of the business. Additionally, at the time of the sale she was going through a divorce and suffered from some health issues.

However, based on the evidence presented, the court finds that the Defendant-Debtor chose to make affirmative representations that the Business and Assets were (1) owned by the Defendant-Debtor and (2) free of all liens and encumbrances. While the former was true, the latter was not - the personal property assets were "encumbered" by the unpaid sales tax obligation. Further, Defendant-Debtor affirmatively wrongly represented that there were no tax issues with respect to the Business.

Though Plaintiffs, as innocent purchasers, might have been able to assert a priority of their interest over the State Board of Equalization lien (Cal. Govt. Code § 7170), such a successful contention does not avoid the liability arising pursuant to California Revenue and Taxation Code § 6812 for the business and assets purchased. The Defendant-Debtor's statement that the Business and Assets were "free of all liens and encumbrances,"

7

other statements that there were no tax issues, and the limited financial information provided were all statements that there were no tax liabilities with respect to the Business and Assets being purchased.

It was asserted by the Defendant-Debtor that she had disclosed to Plaintiffs that the Defendant-Debtor's accountant had not completed her income tax returns.  As discussed below, the stated reason was that Defendant-Debtor did not want her current income disclosed to her soon to be ex-husband.  However, the taxes at issue at trial and the undisclosed liability have nothing to do with income taxes, but the sales taxes owed by Defendant-Debtor from the business and not paid to the State of California.[4]

The evidence also shows that Defendant-Debtor knew at the time of the February 2008 Sale that the State Board of Equalization was asserting claims against her unpaid sales taxes.  Exhibit 6 is a History Summary of calls and contacts made by the State Board of Equalization concerning the Defendant-Debtor's unpaid sales taxes.  In her testimony, the Defendant-Debtor acknowledges having some of the communications (not all were specifically discussed at trial).  The Defendant-Debtor failed to disclose that she had not paid the

---

[4]  As discussed by the California Court of Appeal in *Xerox Corp. v. County of Orange*, 66 Cal. App. 3d 746, 756 (1977), the state sales tax is not a tax on the sale, but an excise tax imposed upon the retailer for the "privilege of conducting a retail business...."  *See* Cal. Rev. & Tax. Code § 6051 (stating that tax is imposed on retailer). A retailer is allowed to add the sales tax to the sales price under specified circumstances (which is the common practice in California).  Cal. Civ. Code § 1656.1.  However, such obligation was that of the Defendant-Debtor in operating the business prior to the sale as a retailer, to pay, and was also imposed in the amount of $30,000.00 on to Plaintiffs when the Defendant-Debtor sold Plaintiffs the Business.

sales taxes to the State Board of Equalization and that such liability existed for the Business she was selling. Because of this non-disclosure and the other misrepresentations that there were no tax issues for the Business, the Defendant-Debtor created for Plaintiffs personal tax liability for the Defendant-Debtor's sales tax obligations.

The court finds relevant another email thread between the Defendant-Debtor and Plaintiffs.[5] This occurred on February 15, 2008, and relates to the tax returns not filed by the Defendant-Debtor. In this exchange the Defendant-Debtor states that she has been "dragging her feet" and had not filed income tax returns so that her soon to be ex-husband would not find out that her income was actually higher than he previously knew. The Defendant-Debtor was concerned that if the soon to be ex-husband were to find out, the Defendant-Debtor would have to pay him even more alimony. While providing such assurance that everything was okay with respect to the "taxes," no mention is made as to the unpaid sales taxes.

Though the Defendant-Debtor offers the non-disclosure of the sale tax liability as merely "inadvertence" or the "fault" of others who maintain her finances, her credibility is impaired by the Defendant-Debtor's own testimony. She testified that she intentionally failed to file tax returns as part of her dissolution strategy with her soon to be ex-husband. This was done to prevent accurate income information from being known. The court finds that Defendant-Debtor's protestation of a belief that she was being

---

[5]   Exhibit B.

9

truthful in affirmatively representing or warranting,

A. Defendant-Debtor "is the legal owner of the Business and that it is free of all liens and encumbrances." Sale Contract, Exhibit 1;

B. "For the sales tax's [sic.] you are correct I have paid those out of my business saving account..I have it linked together." February 10, 2008 Correspondence, Exhibit 2, pg. 1; and

C. The Defendant-Debtor did not want to use an escrow because "My title company, Old Republic Title does not do business escrow, the only one who does them here in our area is an attorney. Also, it makes it [the sale] very public, which I do not like my soon to be ex-husband knowing anything. So that leave you with the question of having my attorney service, Parker Stanbury prepare our agreement." February 11, 2008 Correspondence, Exhibit 3, pg. 1;

rings hollow and is not credible. The court also finds that the Defendant-Debtor's testimony that she was not aware of the sales tax obligation, that she did not misrepresent that there were no sales taxes owing, and that she is not responsible for misrepresenting that there were no sales taxes owing to not be credible.

The Defendant-Debtor argues that the Plaintiffs were represented by counsel in this transaction and failed to do their "due diligence" by not investigating the taxes. No evidence was presented to the court as to what is the standard in the industry or business community for conducting such "due diligence" and what would or could have been done to so investigate the tax delinquency information.

The court finds that such contention is one of "well, I'm not responsible for my misrepresentations if the buyers did not catch me before they were defrauded." The Defendant-Debtor states that since the Plaintiffs were represented by an attorney, then the

attorney should be blamed and the Defendant-Debtor let off the hook for the sales tax misrepresentations.  This contention misses the mark by a wide margin.[6]

The court has to find, for a debt to be nondischargeable based on  fraud, that the reliance by the creditor was "justified." Justifiable reliance looks to the qualities and characteristics of the particular plaintiff and the circumstances of the particular case.  *Field v. Mans*, 516 U.S. 59, 71 (1995).  It does not require that the victim make an investigation of his own unless the facts should be apparent to one of his knowledge and intelligence from a cursory glance or he has discovered something which should serve a warning that he is being deceived.  *Id.; See also Seeger v. Odell*, 18 Cal. 2d 409, 414-415 (1941)(negligence of plaintiff not defense to intentional misrepresentation, constructive notice of public record not a defense to misrepresentation, no "reasonable person standard" for reliance).

In *Romesh Japra, M.D., F.A.C.C., Inc. v. Apte (In re Apte)*, 96 F.3d 1319 (9th Cir. 1996), the Ninth Circuit Court of Appeals explained the meaning of justifiable reliance:

C. Justifiable Reliance

Although the statute does not state what degree of reliance is necessary for application of section 523(a)(2)(A), the Supreme Court has held that the creditor's reliance need be only justifiable, not reasonable. *Field v. Mans*, 133 L. Ed. 2d 351, 116 S. Ct. 437, 446 (1995); *Eashai*, 87 F.3d at 1090.

"[A] person is justified in relying on a representation of fact 'although he might have ascertained the falsity

---

[6] It is highly likely that if the "attorney was to blame" for not catching the Defendant-Debtor's fraud, the attorney would be subrogated to the rights of Plaintiffs and be the party pressing the nondischargeability claim against the Defendant-Debtor.

11

of the representation had he made an investigation.'"
*Field*, 116 S. Ct. at 444 (quoting the Restatement
(Second) of Torts (1976) § 540). Although one cannot
close his eyes and blindly rely, mere negligence in
failing to discover an intentional misrepresentation is
no defense to fraud. *Eashai*, 87 F.3d at 1090-91 (quoting
*In re Apte*, 180 Bankr. 223, 229 (9th Cir. BAP 1995); *In
re Kirsh*, 973 F.2d 1454, 1459 (9th Cir. 1992)).

As discussed by the Ninth Circuit Court of Appeals in *Eugene Parks
Law Corporation Defined Benefit Pension Plan v. Ronald Kirsh (In re
Kirsh)*, 973 F.2d 1454, 1458 (9th Cir. Cal. 1992), "The standard
does protect the ignorant, the gullible, and the dimwitted. . . ."
Further, "it is only if 'the conduct of the plaintiff in the light
of his own intelligence and information was manifestly
unreasonable' that he will be denied recovery--a person cannot
purport to rely on preposterous representations or close his eyes
'to avoid discovery of the truth. . . .'" *Id.*

The court had the benefit of testimony provided by Plaintiffs
and the Defendant-Debtor in open court. While the Plaintiffs are
not "dimwitted," they represent the type of business owner who has
the passion for activities of the business (here a second hand
clothing store), but not sophisticated, or even a demonstrated
above average layperson level business knowledge. Clearly,
Plaintiffs did not have more than a basic understanding for buying
a business in California.

While it is true that the Plaintiffs were represented by
counsel, no information was provided to the court as to the
knowledge and experience of such counsel. Defendant-Debtor does
not contend that such counsel was representing her, owed a duty to
her, or had an obligation to supervise and manage the sale to
protect the Defendant-Debtor from making misrepresentations. The

gist of the Defendant-Debtor's contention appears to be that the attorney became her guarantor and provides automatic absolution for the Defendant-Debtor's misrepresentations about the sales taxes.

There is nothing preposterous about a seller representing that the sales taxes of a business have been taken care of and are not an issue. While not what an experienced transaction lawyer would do, it was not unjustified for Plaintiffs to believe that the Defendant-Debtor would not misrepresent or omit critical information about the business finances, including that there were substantial unpaid sales taxes.

The court also finds credible Plaintiffs' testimony that they would not have purchased the Business for $30,000.00, and paid such monies to Defendant-Debtor, if they knew of the outstanding sales tax liabilities of the business.

The court finds that all of the elements for a determination of fraud have been satisfied. The Defendant-Debtor with knowledge of the falsity, misrepresented and omitted the material information that the business had substantial unpaid sales taxes. The Defendant-Debtor knew of the tax obligation and that the information concerning the taxes, and lack of information, was false and deceptive; the Defendant-Debtor made such misrepresentations with an intent to deceive the Plaintiffs in order to complete the sale of the business to Plaintiffs for $30,000.00; the Plaintiffs justifiably relied upon the misrepresentations and omissions by the Defendant-Debtor; and the Plaintiffs have been damaged by such misrepresentations and omissions in the amount of the $30,000.00 in sales taxes, plus

interest and penalties thereon.[7]

## ACTUAL DAMAGES

The evidence presented establishes that the Plaintiffs have incurred actual damages as follows:

A.    $30,000.00 in tax liability, plus interest and penalties thereon until paid; and

B.    $10,850.00 in costs and expenses in pursuing administrative relief with the California State Board of Equalization for the successor liability which was imposed for the undisclosed unpaid sales taxes of the business that was purchased.

The Plaintiffs have paid the $30,000.00 purchase price once, and due to the misconduct of the Defendant-Debtor are having to pay it a second time, plus interest and penalties, to the State Board of Equalization.

Evidence has been provided that there have been attorneys' fees, costs, and expenses in Plaintiffs challenging the imposition of the $30,000.00. These fees, costs, and expenses are not for litigation with the Defendant-Debtor, but in fighting and appealing the $30,000.00 successor liability tax assessment of the State Board of Equalization. Though under the American Rule each party is to bear his or her own expenses of litigation unless otherwise provided for by contract or statute,

> [i]t is settled that a person who is required through the tort of another to act in protection of his interest by bringing or defending an action against a third person is entitled to recover compensation for the reasonably

---

[7]   The Court makes no determination as to the actual amount of the sales tax liability as between the Plaintiffs and Defendant-Debtor on the one hand and the State of California on the other. To the extent that Defendant-Debtor is correct in her assertions that the sales tax liability is overstated, this decision does not limit or determine such contentions by the Plaintiffs or Defendant-Debtor against the State of California.

necessary attorney's fees incurred. (*Prentice v. North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620; *Glass v. Gulf Oil Corp.* (1970) 12 Cal. App. 3d 412, 437-438.)

*Moe v. Transamerica Title Insurance Company*, 21 Cal. App. 3d 289, 303 (1971).

> Later cases make it clear, however, that the so-called "third party tort exception" to the rule that parties bear their own attorney fees is not really an "exception" at all but an application of the usual measure of tort damages. The theory of recovery is that the attorney fees are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action. In such cases there is no recovery of attorney fees *qua* attorney fees. (*Brandt v. Superior Court* (1985) 37 Cal.3d 813, 817-818.) Indeed, this point was made clear in *Prentice* itself when the court stated it was "not dealing with 'the measure and mode of compensation of attorneys' but with damages wrongfully caused by the defendant's improper actions." (*Prentice*, supra, 59 Cal.2d at p. 621.)

*Sooy v. Peter*, 220 Cal. App. 3d 1305, 1310 (1990). The attorneys' fees, costs, and expenses are additional damages which the Plaintiffs incurred with respect to the third-party State Board of Equalization due to the Defendant-Debtor's tortious conduct. The court finds that the $10,850.00 in attorneys' fees and costs to be reasonable and necessary for pursuing administrative relief from the $30,000.00 sales tax liability.

## PUNITIVE DAMAGES

Plaintiffs have requested that in addition to actual damages, the court award punitive damages. The analysis begins with California Civil Code § 3294[8] as applied by the California Supreme

---

[8]  California Civil Code § 3294.

> § 3294.  When permitted.  (a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the

1  Court.

2       As we [California Supreme Court] ourselves have recently
       observed, in order to justify the imposition of punitive
3       damages the defendant "' . . . must act with the intent
       to vex, injure, or annoy, *or with a conscious disregard*
4       *of the plaintiff's rights*. [Citations.]'" (Italics added;
       *Neal v. Farmers Ins. Exchange* (1978) 21 Cal. 3d 910, 922,
5       quoting from *Silberg v. California Life Ins. Co.* (1977)
       11 Cal. 3d 452, 462; accord, *Seimon v. Southern Pac.*
6       *Transportation Co.* (1977) 67 Cal. App. 3d 600, 607; *G. D.*
       *Searle & Co. v. Superior Court* (1975) 49 Cal. App. 3d
7       22.)

8  *Taylor v. Superior Court of Los Angeles County*, 24 Cal. 3d 890, 895

9  (1979).

10      Damages in general must be "reasonable."  Cal. Civ. Code

11  § 3359.  With respect to punitive damages, the court is guided by

12  the following principles of California law:

13      A.   "[T]he particular nature of the defendant's acts in light
            of the whole record; clearly, different acts may be of
14           varying degrees of reprehensibility, and the more
            reprehensible the act, the greater the appropriate

15

16  ─────────────────────

         actual damages, may recover damages for the sake of
17       example and by way of punishing the defendant...

18       (c) As used in this section, the following definitions
         shall apply:
19
          (1) "Malice" means conduct which is intended by the
20       defendant to cause injury to the plaintiff or
         despicable conduct which is carried on by the
21       defendant with a willful and conscious disregard of
         the rights or safety of others.
22
          (2) "Oppression" means despicable conduct that
23       subjects a person to cruel and unjust hardship in
         conscious disregard of that person's rights.
24
          (3) "Fraud" means an intentional misrepresentation,
25       deceit, or concealment of a material fact known to the
         defendant with the intention on the part of the
26       defendant of thereby depriving a person of property or
         legal rights or otherwise causing injury.
27

28

punishment, assuming all other factors are equal...;"

B.   "[T]he amount of compensatory damages awarded; in
general, even an act of considerable reprehensibility
will not be seen to justify a proportionally high amount
of punitive damages if the actual harm suffered thereby
is small...;" and

C.   "[T]he wealth of the particular defendant; obviously, the
function of deterrence... will not be served if the
wealth of the defendant allows him to absorb the award
with little or no discomfort. [citations omitted] By the
same token, of course, the function of punitive damages
is not served by an award which, in light of the
defendant's wealth and the gravity of the particular act,
exceeds the level necessary to properly punish and
deter."

*Neal v. Farmers Insurance Exchange*, 21 Cal. 3d 910, 928 (1978).

In addressing the propriety of a punitive damage award in federal court, the United States Supreme Court stated,

In light of these concerns [procedural and substantive
constitutional limitations], in *Gore supra*, 517 U.S. 559,
we instructed courts reviewing punitive damages to
consider three guideposts: (1) the degree of
reprehensibility of the defendant's misconduct; (2) the
disparity between the actual or potential harm suffered
by the plaintiff and the punitive damages award; and
(3) the difference between the punitive damages awarded
by the jury and the civil penalties authorized or imposed
in comparable cases. Id., at 575, considers the
proportionality of the punitive damages to the
compensatory damages awarded to the Plaintiff-Debtor.

*State Farm Mutual Auto Insurance Company v. Campbell*, 538 U.S. 408, 418 (2004). The Supreme Court opined that while a punitive damage award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety, higher multiples have been awarded. *Id.* at 425.

Defendant-Debtor intended to mislead the Plaintiffs into purchasing the Business. Defendant-Debtor was aware of the unpaid tax liabilities she and the Business owed and hid that information from Plaintiffs. By doing so she ensured that the Plaintiffs would

17

unwittingly be liable for a portion of the sales taxes Defendant-Debtor failed to pay.

Evidence was presented that the Defendant-Debtor made representations that she was going to pay the tax liabilities from an inheritance she was to receive from her grandmother. This is stated in the State Board of Equalization phone contact records presented as Exhibit 6 and the testimony of the Defendant-Debtor. The records reflect that the Defendant-Debtor was to receive a 2004 320 CI convertible BMW (January 1, 2008 phone call record) and jewelry, which will be sold to pay the taxes. Exhibit 6, pg. 54 of 61, January 28, 2008 phone call record.

However, at the time of trial the Defendant-Debtor stated that the car and jewelry ended up "going to her brother and mother." No credible explanation was provided for how assets the Defendant-Debtor stated she had were not hers.

Hiding the existence of the sales taxes was in conscious, callous disregard of the Plaintiffs' rights and the obligations that Defendant-Debtor secretly imposed on them. The Defendant-Debtor knowingly and intentionally made the misrepresentations in order to obtain the $30,000.00 purchase price from Plaintiffs.

As with many punitive damage claims presented to this court, the evidence as to the Defendant-Debtor's current financial condition is thin. The court knows that the Defendant-Debtor has sought and obtained relief under Chapter 7 of the Bankruptcy Code. Bankr. E.D. Cal. 12-93176. This is often because the defendant is the bankruptcy debtor, who by the time he or she is driven to bankruptcy has little left. Such information is disclosed on Schedules A and B filed by the debtor under penalty of perjury,

18

making his or her financial information, at least as of the commencement of the bankruptcy case, an open book.

Defendant-Debtor received her discharge on April 1, 2013. 12-93176 Dckt. 15. This has freed her of the various other debts and obligations which predate the bankruptcy. However, it has not freed her of the nondischargeable debts owed to the State of California for the unpaid sales taxes.

Schedule B, listing personal property of the Debtor, identifies assets totaling only $5,124.00 in value. 12-93176 Dckt. 1 at 9-11. No real property interests are listed on Schedule A. *Id.* at 8. Schedule I lists the Defendant-Debtor receiving income of $1,071.00 a month from an entity identified as Del Don Farms. *Id.* at 22. On the Statement of Financial Affairs the Defendant-Debtor states that 2012 year to date she received $13,283.64 in income, $3,221.00 in 2011, and $19,339.00 in 2010.

Considering the Defendant-Debtor's conduct, her knowledge of the substantial unpaid State Board of Equalization taxes, the affirmative representations made concerning the income taxes, the intentional failure to disclose the unpaid State Board of Equalization taxes, the statements about intentionally delaying filing tax returns to prevent the disclosure of current, accurate financial information, the Defendant-Debtor's limited finances based on the information provided to the court, and the $40,850.00 in actual damages, the court finds and awards $10,000.00 of punitive damages to the Plaintiffs. This represents less than 25% of the actual damage award, not even a one-times multiplier of the actual damages.

The court shall issue a separate judgment for $40,850.00 in

actual damages and $10,000.00 in punitive damages for Plaintiffs, jointly and severally, and against the Defendant-Debtor. Further, that such judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Plaintiffs shall file a costs bill on or before May 22, 2014.

The Defendant-Debtor shall receive a credit for any monies paid to the California State Board of Equalization which is applied to and reduces the successor liability of the Plaintiffs or for the reduction in the amount of successor liability the Plaintiffs obtained through the efforts of Defendant-Debtor.

Dated: May 7, 2014

RONALD H. SARGIS, Judge
United States Bankruptcy Court

# Instructions to Clerk of Court
## Service List - Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked _____, via the U.S. mail.

**Debtor**(s), **Attorney for the Debtor**(s), **Bankruptcy Trustee** (if appointed in the case), **and** __XX__ Other Persons Specified Below:

Office of the U.S. Trustee
Robert T. Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

Andrea Sessions
1455 East G Street, #B
P.O. Box 11690
Oakdale, CA 95361